GOULDING (PALYART v.). See Case No. 10,701.

---

## Case No. 5,642.

GOULD'S MANUF'G CO. v. COWING et al.

[12 Blatchf. 243; 1 Ban. & A. 375; 8 O. G. 277.][1]

Circuit Court, N. D. New York.    July 10, 1874.

PATENTS—INFRINGEMENT — MEASURE OF DAMAGES —PROFITS.

1. In a suit in equity brought for the infringement of letters patent granted to the plaintiffs, the Gould's Manufacturing Company, as assignees of William H. Pollard, the inventor, August 8th, 1871, for an "improvement in gas-pumps," the plaintiffs had a decree referring it to a master to ascertain and report their damages. He reported the damages at $47.71 per pump on 298 pumps. The plaintiffs proved the expenses of making and selling the pumps, that they were prepared and ready to fill the orders taken by the defendants, and the prices at which the pumps were sold by the defendants. The master took, as the measure of damages, the difference between such expenses and such prices: *Held*, that the rule was an erroneous one.

2. The invention was one only of an improvement in the pump, and not of the entire pump. Numerous parts of the pump were in general use prior to the patent, and were not claimed therein, and were free to be used by the defendants. The patented invention claimed was a special construction of a side-chamber, whereby the same was adapted to use with the valve-casings bolted on the outside, and the damages could not exceed the profits upon such improvement.

[Cited in Schillinger v. Gunther. Case No. 12,-457.]

3. As the plaintiffs failed to show the profits or damages arising from the use of the improvement, the master should have decided that nominal damages only could be recovered.

[Cited in Buerk v. Imhaeuser, Case No. 2,107. Followed in Gould Manuf'g Co. v. Cowing, Id. 5,643. Cited in Star Salt Caster Co. v. Crossman, Id. 13,320; Calkins v. Bertrand, 8 Fed. 758; Maier v. Brown, 17 Fed. 737.]

In equity. This suit was brought [against John P. Cowing and others] upon letters patent [No. 117,925] granted to the plaintiffs, as assignees of William H. Pollard, the in-

[1] [Reported by Hon. Samuel Blatchford, District Judge; reprinted in 1 Ban. & A. 375, and here republished by permission.]

ventor, August 8th, 1871, for an "improvement in gas-pumps." The specification stated that the improvement was one "in gas-pumps for oil-wells." It said: "This improvement is applicable to any ordinary use where a double-acting pump is required, but it is specially designed for drawing off the gas from the casings of oil-wells, and conducting the same to the furnace of the engine. For this purpose it is necessary to have tight joints to the pump; and the invention consists in the construction of the side-chamber of the cylinder and the valve-casing, as hereinafter described, with this special purpose in view. In the drawing, A represents the base of the pump; B, the cylinder; C, the cap or top of the pump; and D, the piston. These parts, in general arrangement, are the same as those in use in ordinary double-acting pumps. On one side of the cylinder is cast a chamber, E, extending from top to bottom. This chamber is divided longitudinally by a partition, a, which thus forms two longitudinal passages, b, b, which have no direct communication with each other, or with the cylinder. Lateral ports, c, c, are made in the sides of these passages, for the connection of the pipes which extend to the well and to the furnace. These passages b, b, do not open at top and bottom into the interior of the cylinder, as in ordinary double-acting pumps, but open outward by ports d, d, and thus communicate with similar ports, d', d', of the valve-casings, F, the construction of which will presently be described. By this arrangement the passages b, b, are made to communicate with a valve-casing bolted outside the pump, which is a distinguishing feature of my invention. Two of the valve-casings F, F, are used, one at the top and one at the bottom, and they are simply bolted tightly in place against the plane-seats f, f, with only a packing between. These valve-casings are each cast in a single piece, and, besides, the ports d', d', before spoken of, have a central port d², which communicates with the interior of the cylinder by a similar port, d³, formed in the latter. These ports are shut off from the passages b, b, and the gas from the latter can reach them only by making the circuit through the hollow valve-casings. The valve-casings are each cast hollow, and provided with seats, g, g, on which strike the valves h, h. The ports d', d', which open from the passages b, b, open one over and the other under the valves h, h, so as to produce a reverse action, as the piston goes up and down; and the open spaces i, i, above and below said valves, respectively, connect directly with a central space, which forms a continuation of the central port d². This construction (which is clearly shown in Fig. 2) consists simply of a web, which is cast entire in the hollow valve-casing, thereby allowing the free reverse action of the valves without any of the loose or open joints that occur where the valve-casing is made up of several

separate and detached parts. In this improved construction there is but one joint to each end of the pump, and that is at the junction of the valve-casing with the seat f; all else, both of the side-chamber and the valves, is inclosed by a solid construction; and hence there can be no essential escape of the volatile gas as it passes through. The special construction of the valve-casings to produce this result, I believe to be new. The stems of the valves h, h, rest in screw sockets, 1, 1, in the usual manner. I am aware that it is common to cast a side-chamber to a double-acting pump, to allow the medium to follow the action of the plunger. Such, in its broad sense, I do not claim. I claim only the special construction of my chamber, whereby the same is adapted to use with the valve-casings bolted upon the outside. In this connection the passages b, b, must open outside, while in other pumps they open inside the cylinder. In the same manner I do not claim, broadly, locating the valves in a hollow casing, but only the special construction of the casing described, whereby the same is adapted to be bolted upon the outside of the gas-chamber, thereby making but a single joint at each end of the pump. It will be noticed that there is not only an alternate action of each pair of valves in a single casing, but also a similar action in each pair situated in line at the top and bottom, thus producing a compound action, which keeps up a continuous movement of the gas. In a gas or air-pump, it is essential to get the full stroke of the piston, to leave none of the medium or fluid at either end at the reverse movement. What I claim, as my invention, and desire to secure by letters patent, is: 1. The chamber E, provided with the longitudinal partition a, forming distinct and separate passages, b, b, which have side ports, c, c, for the attachment of the induction and eduction pipes and ports, d, d, at top and bottom, opening outward into the valve-casings, as herein described. 2. The duplex valve-casings F, with the ports d', d', d², opening respectively to the passages in the side-chamber and to the cylinder, and provided with the seats g, g, so arranged as to admit the gas or other fluid over one valve and under the other, as herein described. 3. The combination and arrangement with the cylinder B, of the outside chamber E, provided with the seats f, f, of the valve-casings F, F, bolted thereon, in the manner and for the purpose specified."

J. B. Perkins, for plaintiffs.
Elisha Foote, for defendants.

HUNT, Circuit Justice. Upon the hearing of this case upon the merits, it was adjudged by the court that the patent to the plaintiffs, dated August 8th, 1871, was a valid patent, and that the defendants were infringing in respect to all the pumps manufactured and sold by them subsequent to that date. It was referred to a master to ascertain and report the complainants' damages. The master reported that the complainants should recover damages on 298 pumps manufactured, to the amount of $47.71 per pump. To this report the defendants filed exceptions, and the case now comes before the court on the hearing of such exceptions.

The principal question arises upon the third exception, and regards the rule for the measure of damages adopted by the master. The complainants proved the expenses of making and selling the pumps in question, that they were prepared and ready to fill the orders taken by the defendants, and the prices at which the pumps were sold by the defendants. The master found the damages to be the difference between such expenses and such prices, and reported accordingly.

If the plaintiffs had been the inventor and patentee of pumps, or of double-acting pumps, the argument would have been strong in favor of the rule adopted. But the invention patented and infringed was of an improvement upon pumps merely. Such was the decree, which did not restrain the defendants from making pumps, or even the pumps in question, but only certain devices, forming a part of them, and which devices the court adjudged to be an improvement belonging to the plaintiffs, which had been infringed by the defendants. The decree adjudges that the letters patent in question, "for an improvement in gas pumps, dated August 8th, 1871, and more particularly set forth in the complaint, were and are valid in law, and that the defendants infringe on the rights secured thereby;" and the defendants are restrained "from making, using or vending the device or improvement secured thereby." In making the report, his master says: "While admitting, of course, the doctrine that, in some cases, the profits resulting from the mere improvement must be separated from those of the entire machine, and allowed to the plaintiff as the sole measure of damages, I am unable to see how, upon any correct principle, this separation can be made in the present case. I have said, in the opinion accompanying this report, that, as it appears to me, the comparison must be made between the machine as it stands, with its patented improvements, and what would be left of the same machine, if these improvements were taken away, and not between this machine, with its patented improvements, and any other one having the same general character, not patented, and used in the business, and sold in the market. If this criterion is the correct one, and, for the purposes of this decision, I hold it to be so, it is very plain that, if the patented improvements on this gas-pump are removed, there is nothing left which can be called a machine, and in respect of which any profits can be predicated. I distinctly hold, then, in order that the question may be distinctly presented —although it seems to me to be a matter of law, a sort of construing the machine in the

same way that a court construes a writing—that the profits resulting from the patented portion of this pump cannot be separated from those resulting from any other part of it." In concluding his report, he says: "In conclusion, I find and report, that the plaintiffs are entitled to recover, as 'damages' sustained by them, by the sale of the aforesaid 298 pumps by the defendants, as aforesaid, at the rate of $47.71 for each pump so sold by the defendants, that being the whole profit which, as appears from the evidence, the plaintiffs would have made from the sale of each entire pump."

Pumps have been in use since the earliest ages of the world. Double-acting pumps, like the one in question, have long been in use. Double-acting pumps, having cast a side chamber, to allow the medium to follow the action of the plunger, have long been in use; and, in this patent, it is expressly stated that this is not claimed as an invention by the plaintiffs. The base, the cylinder, the top, the piston, are the same, in general arrangement, as are used in ordinary double-acting pumps. These things are not claimed by the plaintiffs to be within their improvement. Their use is free to the defendants. Only a special construction of the side chamber is claimed, whereby the same is adapted to use with the valve casings bolted on the outside. Valves must exist in every pump, and they must open on the outside. They are located in hollow casings, but this the inventor, in his patent, says that he does not claim. A valve-box or valve-case, (that is, the portion of the passages to and from the cylinder that contains the valves, cut off from the rest, for the convenience of fitting the valves, and then bolted on again to the outside of the cylinder,) is a valuable device, forming a part of this machine, but it is not claimed to belong to the plaintiffs, although the specification is said to have been drawn with reference to it. I do not pursue the analysis of the patent so carefully carried out by the defendants' counsel, showing all the parts which were in use before the alleged improvement, and showing specifically what the patent claims. Enough has been said to present the main question in the case, viz., whether the patentees can recover the profits for the manufacture of the entire pump, or whether their claim is limited to the profits upon the improvement embraced within the patent. The master concedes the latter to be the rule in some cases; but, if I understand his reasoning, above quoted, he takes this case out of it on a ground that, I think, cannot be sustained. The comparison is to be made, he says, "between the machine as it stands, with its patented improvements," (the plaintiffs' improvements, I assume,) "and what would be left of the same machine if these improvements were taken away, and not between this machine, with its patented improvements, and any other one having the same general char-

acter, not patented, and used in the business, and sold in the market." The portion of the pump in question which belongs to or is included in the improvement of the plaintiffs is very small, and a machine constructed upon other known principles and devices applicable to pumps, omitting the plaintiffs' improvement, would include nearly everything useful that is to be found in the present machine. A different view of this matter of fact is the basis of the master's opinion. I judge that the master holds the plaintiffs' improvement to be more extensive than it is.

The proposition is simply this: The patentee takes the well-known portions of a pump used in pumping gas-oil, with passages, valves, piston, chambers, openings, &c., as ordinarily made and used, and adds a chamber of an important construction, as it is alleged, and a combination with certain other parts described. Now, if this addition is not a new and useful improvement, no damages can be claimed for its use. If it is such an improvement, the improvement, in its nature and by law, is and must be capable of being described and pointed out, and must be described and pointed out. Every skilful mechanic must be able to learn, from the patent itself, precisely what the monopoly covers. Act July 8, 1870, § 26 (16 Stat. 201). If this alleged improvement is so confounded with portions of the machine which are the subjects of other patents, or which, from long continued use, are open to the public, that it cannot be separated from them, or if, when so separated, it has no value, it is not a patentable invention, and no damages are due for its use. The decree in this case has adjudged the patent to be valid. In its nature, therefore, it is, and must be, capable of separation and distinction from other portions of the machine. The ruling of the master, that the profits arising from the improvement of the plaintiffs cannot be separated from the profits of the machine generally, seems to be based upon the idea that the improvement of the plaintiffs is all that is valuable in the machine. I cannot but consider this a great mistake, as I have already shown.

I understand the rule to be settled, that, when the patent is for an improvement upon a machine, the damages for the infringement of such patent are confined to the profits made by the use of the improvement only, and not by the manufacture of the whole instrument. What profit or advantage did the defendants obtain by the use of the plaintiffs' improvement? What advantage did they have that they would not have had, if they had built their machines without the improvement? In Philp v. Nock, 17 Wall. [84 U. S.] 460, although the case did not, perhaps, require an adjudication of the point, the rule is thus laid down, by Swayne, J.: "Where the infringement is confined to a party of the thing sold, the recovery must be,

limited accordingly. It cannot be as if the entire thing were covered by the patent; or, where that is the case, as if the infringement were as large as the monopoly. * * * The plaintiff must show his damages by evidence. They must not be left to conjecture by the jury." In Mowry v. Whitney, 14 Wall. [81 U. S.] 620, 649, the precise point before us was in question. The defendant was charged by the master with $91,000, as the profits arising from the use of the plaintiff's patent, in manufacturing car wheels, which was the profit obtained from the manufacture of the entire wheel. In delivering the opinion of the court, Strong, J., says: "It is clear, that Whitney is not entitled to recover more than the profits actually made in consequence of the use of his process in the manufacture of the 19,819 wheels. It is the additional advantage the defendant derived from the process—advantage beyond what he had without it—for which he must account; * * * but the master charged the profit obtained from the entire wheel, instead of that resulting from the use of Whitney's invention in a part of the manufacture. * * * It is as true of a process invented as an improvement in a manufacture, as it is of an improvement in a machine, that an infringer is not liable to the extent of his entire profits in the manufacture. The question is, what advantage did the defendant derive from using the complainant's invention, over what he had in using other processes then open to the public and adequate to enable him to obtain an equally beneficial result? The fruits of that advantage are his profits. They are all the benefits he derived from the existence of the Whitney invention."

The burden of proof rested upon the complainants. The damages to the plaintiffs, or the profits to the defendants, (they are the same thing,) must be proved like the other points in the case. For all the profits or advantages with which they have been charged, (except that precise advantage derived from using the plaintiffs' improvement,) the defendants may still be liable to other inventors, or they may have already paid for them to those inventors. Upon no principle can the plaintiffs assume that they belong to themselves, and call upon the defendants to disprove this assumption. It is not necessary further to examine the cases on this point. The supreme court have decided it explicitly, and, if there are cases found to the contrary, they must be considered as overruled. The master should have decided that, as the plaintiffs had failed to show the profits or damages arising from the use of the improvement, nominal damages only could be recovered.

The third exception is allowed, and, as it goes to the basis of the entire recovery, it is not necessary to consider the other exceptions in the case.

[See Case No. 5,643.]